It's your time and your expertise here today. Thank you. First matter is U.S. vs. Barry Wilderman. It's a Cuitan, so it's X-Rail naked, but you know what it is. Good morning, Your Honors. Good morning. My name is Arthur R. Schuman, S-H-U-M-A-N, and I represent two of the defendants in the underlying case in the District Court, but I'm here today representing myself in connection with my appeal from a denial in the District Court of a motion to allow myself to withdraw from representation in the case. Do you consider the ruling by the District Judge to be a final determination on the issue of whether there's a conflict involving an ethical requirement? Could he rule differently at a later stage of the litigation? I think this. I think the trial judge could have done a lot more to delve into that, but having ruled as he did and denied the motion, he was in effect saying to me, you go ahead, you're going to represent them, and I can't do that. Well, why isn't that appealable? I believe it is appealable, and that's why I filed the appeal. Well, why is it appealable? It's appealable because as to me and my conduct from that point on, it is final. It is telling me that I have to go ahead and represent these men, and if I represent them, I'm violating the rules of disciplinary conduct. Well, not if you represent them pursuant to a judicial determination. No. If we order you, if we simply say that what the District Judge did does not fit under Cohen, it's not a final order, we have no jurisdiction, it goes back, you then have a judicial order basically denying your motion to withdraw. Doesn't that shield you from any kind of disciplinary action? Judge McKee, I might agree with you if there had been a full consideration of the matter and a determination in the court below that there was no conflict. What difference does it make? Even assuming that there's a conflict, and I guess there's some issue about whether or not there's been a waiver, it creeps up at one point and then it kind of disappears, and I was going to ask about that. Even assuming that there is no waiver, you'd be in a position where the District Court, you file the motion to withdraw, you brought the issue of Rule 1.7, 1.9, I guess it is, to the court's attention. I did. The court has said, too bad, I'm denying your motion to withdraw, proceed. How then would you be, how would you not be protected from any disciplinary repercussions if you're only engaged in whatever conflict may arise from that, arises pursuant to the court's denial of your motion to withdraw? I don't understand how you'd be subject to disciplinary action. If I went forward from that point, Your Honor, I'm faced with this prospect. If I represent both men, I'm in a position where to represent either of them I have to attack the other. But that was from the very beginning. No, that wasn't from the very beginning. When you get into a quid tam case representing more than one punitive defendants under a quid tam, you always have the issue that A did it, B didn't do it, and here you've even got a corporation. Some corporate entity's liable. A did it, B didn't do it, B didn't know anything about it. A will argue, no, no, no, I didn't do it, B did it, and I didn't know anything. It's like defending two drug conspirators in a drug conspiracy where each one's going to point the finger at the other and say, they were his drugs, not mine. That was there from the very beginning. That was not the case in this case. In this case, the defense was absolutely common. The only change in that took place when I learned well into the case that the third partner had not been a partner, had not been involved in billing practices. This had to do with. But you don't represent. No, I do not. I brought that to the court's attention. He obtained other counsel. This case had to do with corporate practices and policies concerning how billing was done. There was a common defense, and I could see no problem, no conflict in representing both of these men and the partnership. When you say a common policy in how billing was done, who was it who promulgated the policy and who took the actions pursuant to the policy? It was in two, one of or both of two individuals. You're representing them both. How would you not potentially, not necessarily, but how would you not potentially be in a situation where each one is pointing fingers at the other? Because they weren't, Your Honor. They were not at that time. The problems didn't arise until we got into these issues of discovery and disappearing records and things of that nature. And there was then a motion to enter default judgment and for costs, and the costs in that case were considerable. I mean, we were talking about a couple of million dollars all told, not just costs but costs and the default judgment. And now the finger pointing started. And now I found myself in a situation where to defend one, I have to attack the other and vice versa. Was it the discovery of the apparent erasure of the hard drive of the computer that was the flare in the sky that alerted you that the two doctors no longer had a common defense? No, what really happened here, Judge, was this. Or Chief Judge, excuse me. What really happened here was that this case strung out so long that the practice was virtually put out of business as a result of this lawsuit. Whose fault was that? Whose fault was it? They've been trying to get records since the 70s. Believe me, I'm not here to defend what has happened with regards to the records. What I'm pointing out, though, is that the problem in terms of the conflict arose as a result of those issues, not as a result of the general defense issues at the start. I would stand here today. If the trigger wasn't the discovery of the hard drive apparently being erased, then what was the trigger that alerted you that suddenly the common defense is gone and antithetical defenses are posed? It's not that a trigger alerted me. It's that when the question of destroyed documents came up, I then had conversations with both men and things were brought to my attention by each of them. So it was statements by the two doctor clients? It was. And when, approximately when, did those statements occur? That would have been in, I would say, the spring to fall of 2005. It was when the question of these missing documents came up. And when did you file your motion to be allowed to withdraw? My motion was filed in? September, was it? August, I believe. Let me see. Motion to withdraw was filed August 28, 2006. So the process started. A year after the doctors made the statements that suddenly showed? No, no, no, no. Excuse me. That's not when the process started. Those statements were not made until the alleged destruction of the computer records. But prior to that, questions arose which led to a reopening of discovery. There were then additional depositions ordered by the trial judge. Of the bookkeeper. That's right. We got into that process. That led to questions that exacerbated the discovery situation. And then in the letters attached here, but I would think it was sometime into 2006 when we were trying to locate these computerized records. And then finally the computers are located. I had the computers examined by an expert to get the records off them so we can produce them. Then we find out the records, the drives have been wiped. Apparently wiped. I don't disagree with that determination. And then subsequently one or both doctors gave some explanation about that? Well, with great respect, Your Honor, I don't want to go into the particulars of what they. I'm just trying to figure. That led to detailed conversations about going back over the whole discovery aspect of the case. And then information came to my attention then, which was extremely relevant and directly relevant to the motions that were pending in terms of the default judgment and costs. So on that. Did Judge Shirk question the sufficiency of the detail in your five-page affidavit? No. Was there any discussion of ex parte submission of a more detailed account of what either or both clients said to you so that the judge could really get into the meat of this? There was not, Chief Judge. I think. We don't have the benefit of any opinion from Judge Shirk. I'm just talking about the communications in the courtroom. Well, I think if you recall the papers, my motion was filed in two respects. It was filed, first of all, indicating that since penalties were sought against me, I was in a position where I couldn't defend myself without violating my confidences and so forth with my clients, but also that I had a conflict between representing the clients as well. Both in the same motion? In the same motion. Judge Shirk decided both of those issues from my point of view in one paragraph. He said the motion for sanctions as to Schuman is denied, and his motion to withdraw is denied. And I have a sense that Judge Shirk thought maybe that denying the motion as to the sanctions for me solved the problem of the conflict, but it really did not. But there's at least a paragraph in your affidavit that would indicate that there remained a problem of client A versus client B. Yes. Paragraphs 12 and 13 certainly indicated I still had that problem. And there was never any discussion about whether further details were needed? No, there was not. Did you move for reconsideration of the denial? I did not. I did not because at that time we were on a pretty short leash, and there were things pending and ready to go forward, and I felt I had to move immediately. Thank you very much. Thank you. Thank you. May it please the Court, John F. Annelli on behalf of the relator. Mr. Annelli, can I inquire of you whether you received a letter from the clerk recently, and with regard to its content, whether you have any problem with my participation in the decision of this appeal? Your Honor, I did receive a letter, and no, I do not have any problem with your participation. Thank you. I don't know. I don't. We haven't conversed this case. You're not in an enviable position here. I am very sympathetic to the slight amount of delay. It's more protracted warfare that you've had to butt up against now for seven years. But the deck that we have now, if we were to send this back and require that Mrs. Schuman proceed, either by determining that we don't have jurisdiction under Cohen or that we affirm it on the merits, we're stuck in a situation. What would it look like when you go back for, if it did get to trial, arguably Mrs. Schuman would become a fact witness that you would subpoena based upon what happened to the hard drive. There'd be issues of privilege involved that you would try to extract from Mr. Schuman, I would imagine, while he is representing the two doctors. I mean, what would it look like if you were to win it? I will tell you what I believe will happen in the case should the court be sustained. I believe the court will enter the motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and that judgment will be entered against at least the corporate entity and Drs. Wilderman and Gerwurz. To address the question raised earlier as to what consideration the court below gave to the affidavit submitted by Mr. Schuman, I think it's important to take a look at the history of the litigation. We came up to trial in February 28th. We were supposed to commence trial in 2005. The litigation had been instituted, as you know, in 1996. It's a very sorry chronology and it's very regrettable, but I'm not sure there's anything we can do about it at this stage. Well, I think that the court below has a very good sense of what was going on and took into account the affidavit by Mr. Schuman. On the eve of trial when Mr. Schuman produced documents, which for a number of years, a decade, they had denied having. Let me ask you this. Would it be permissible, would it have been permissible for Judge Sarek to say, I agree that Mr. Schuman has grounds for thinking he has a prohibited conflict between the two doctors, but in view of the delay and the problems with discovery and the prospect of further delay, I hold that the delay considerations outweigh the conflict of interest that I acknowledge he reasonably concludes that he has and, therefore, I will not allow him to withdraw. Would that have been a permissible rationale for Judge Sarek? I think that Judge Sarek in making a ruling that removed any conflict that Mr. Schuman had could make that determination. What authority do you have for that? The discretion that the court has under Rule 37. There was no discernible conflict of interest that was spelled out in the motion to withdraw as counsel. What about the affidavit and the numbered paragraphs Mr. Schuman reminded us about, 13 and 14 or whatever they are? Well, the case law with regard to corporate entity is that, and its principles, is that they are responsible for retention of the documents. There's no question that they're all on the hook to honor discovery obligations, but I'm not sure that's the issue. It seems to me the issue is a little different. Well, I don't see there being a conflict. They all have an obligation. A violation by one goes to all. Hypothetically. Suppose I'm the client and my colleague, Dr. McKay, and I had this practice together and it ends up that the bills were phonied up and the government was defrauded and the taxpayers were cheated and so on, and a question comes up about who caused the phony billing and you represent Dr. McKay and me. And in separate conversations, one of us tells you, well, look, we have a hard case here because I told the bookkeeper to double all the time signatures on the procedures so we'd get twice as much money and I ran the practice for this purpose and McKay didn't know anything about it. Now, assuming hypothetically that those are the facts, don't you think that there's a huge conflict if you continue to represent Dr. Michelle and Dr. McKay? The potential for that conflict existed all along. It was raised by Dr. That's not the question. At the time the statements are that my confession to you as my lawyer is made and I exonerate McKay, don't you then have a conflict? There was a waiver of the conflict. Where was the waiver? Dr. Polony raised the issue in 2004. He made a motion to get separate counsel and in chambers, Judge Surek turned to Mr. Schuman and said, does Mr. Grewitz want separate counsel? We're not going to delay this matter any further. If he wants separate counsel, he ought to get it now. If not, I want a waiver. And he gave the waiver. And the waiver was presented to Judge Surek on the same day that the documents were made that had not been made available for ten years are made available and resulted in an immediate in camera What's the form of this waiver? This is total news to me. Me too. There was a written waiver that was requested from Mr. Grewitz. Mr. Schuman was directed to come up with it and Mr. Schuman gave it to the court. A letter? I don't have a copy of it, but that's my understanding. Is it in the record? It's not in the docket. What about the other doctor? Did he also submit a written waiver? They both have to waive. Well, the representation made by Mr. Schuman was that there was a decision made by Dr. Wilderman that Mr. Schuman would continue to represent him. It was in that context that Judge Surek raised with Mr. Schuman whether Dr. Grewitz wanted separate counsel. So that's in 04? That's in 04. Now we're told I'm sorry, yes, August of 04. And we're told that, I think I have the chronology right, that in 05, some new information came to Mr. Schuman's attention from the mouth of one or both clients that changed the picture. So even if there were a waiver, even if it were in writing, even if the judge had a colloquy with the clients and the lawyer about the waiver then, if there are new circumstances subsequently, wouldn't the waiver have to be considered no longer operative? Well, I think that what Judge Surek did was appropriate. He issued an order that said file a formal response to the sanctions motion and provide the justification. Even if you're 100 percent right in 04, if new facts come up in 05, wouldn't the 04 waivers have to be regarded as inoperative? I am assuming yes. They're in the news. I am assuming yes. But what Judge Surek did subsequently, when we filed the motion for sanctions and when Mr. Schuman raised the issue of conflict of interest, the judge did two things. He removed Mr. Schuman from having personal conflict of interest and then he gave him an opportunity. He told him to directly respond to the motion for sanctions and if documents that were to be produced that they claimed that they couldn't produce, to give the legal justification. So he gave Mr. Schuman the opportunity that Your Honor is suggesting to explain in greater detail in an appropriate manner. He didn't say you have to file it as a record. Wasn't it thereafter that Schuman filed his motion supported by the five-page affidavit? I believe that the motion was filed before. Because what the judge did was he issued a directive, yes, Your Honor is right. First he gave him a directive to produce the documents within five days and give legal justification. You may be right that he could have produced new waivers or he could have produced claims of privilege or he could have done other things. He did another thing. He moved to withdraw. Not irrelevant, not unresponsive to the order. It's just not maybe the option that you would have preferred, but it seemed like it was a permissible, available, sensible option. Well, but this is why I come back to the discretion of the trial court and the earlier in-camera, the 2005, February 2005 in-camera proceeding that took place. Suppose we decide that we think there clearly was a conflict and that in rejecting the conflict Judge Sirak was clearly wrong. Is it your view that we're nevertheless authorized to say, but because it's a matter entrusted to the sound discretion of the trial judge, we won't reverse, can't reverse, shouldn't reverse? The only way I can answer that is to say that there's no discernible conflict of interest. You're not cooperating with the question. The question is take it as the premise, the given part of the problem, that we were to conclude there is a conflict and that in saying there wasn't, Sirak was wrong. In that context, how could we justify not reversing on the grounds that, well, he has broad discretion, he can do this anyhow? You could not justify. It would be inconsistent, which is why I said all I can say in response is that there's no discernible conflict of interest. So your real case is paragraph 13 and 14 aren't good enough. Don't prove a conflict. That's correct. What if I remand for an explanation? We don't really know. We're talking about an abuse of discretion. We don't know what caused the judge to exercise the discretion in the manner that he did. It was just an order without any explanation. I hate to do anything to delay this case even more, but I can see he's sending it back with getting an explanation. Arguably, there's not something in that explanation that you can then come back and appeal. I don't know if we would retain jurisdiction or not. It seems like we have to. If it were remand, it would take what is already a mess and make it even messier. That is an option that exists. If the court feels that it needs to have more information in order to see whether there's a conflict of interest, asking the trial judge to set forth the basis on which he believes that there was no conflict of interest is an option. Your candor certainly is commendable, and your persistence and perseverance in this case in the face of all sorts of very unfortunate problems, also I think very commendable. I certainly appreciate it when advocates are advocates, but also take reasonable positions and are careful with the facts. It's a rarity. Unfortunately, it's a rarity. I assume that you would agree that any conflict that subsequently arose was potentially there, if not actually there from day one, that it's inherent in the nature of this kind of an action. We do believe that to be the case. In fact, when Mr. Shulman speaks of a joint defense, in my eyes, there was a joint defense, and the joint defense was no HIC for 1500 forms. They can't make out a prima facie case, and that was a position that was agreed to from day one among all the defendants, all the way up until there was a break in the ranks when Dr. Polony wanted separate counsel. He was the one who kept agitating and stating there were more documents, and it was on the eve of trial that, lo and behold, those documents showed up, and there was an in-candor hearing that Judge Surik held that day and the following day to get to the bottom of this. Now, I was not a party to that because it involved some privileged communications, but the judge, I believe, the court below, had very good reasons for what it did, and that there is no discernible conflict of interest. If your choices, obviously this isn't necessarily the case at all, but if your choices were a remand for further explanation by Judge Surik of why he exercised his discretion in the face of this affidavit, this entire record, his knowledge of all the events, et cetera, on the one hand versus a reversal which lets Schumann out and causes, admittedly, more delay, which is the lesser evil from the standpoint of your protecting your client's interest? The remand. Is the preferred course. Absolutely. Can I ask you an impertinent, I guess, question, but just to understand the practicalities here. Who's really got the money? Is there any money in corporate bank accounts that would amount to anything, or is all the money in the personal financial accounts of the two doctor defendants? I don't know the answer to that, but it is a matter that is important to the government. Given your candor, I will ask it, otherwise I wouldn't normally ask this, but are you conceding that this is an order that fits under the Cohen Doctrine, that we do have jurisdiction? No. No, the starting point is, is there a discernible conflict? You need to see that there's a discernible conflict of interest in order for there to be some basis to say that there are rights that will be irretrievably lost in the absence of an immediate appeal. But a motion to, an order denying a motion of withdrawal is different from, say, the Bigeaud kind of order, where there would be jurisdiction. That's true. That's true. All right. Thank you. Did you use your time for rebuttal? I told the clerk, but I didn't ask for it with the court, and I understand that that means I don't have it. If you told the clerk your time was clicking based on what you told her, it's not like the tree that nobody hears fall. Oh, I'm sorry. I did reserve three minutes. All right. I would just clarify a couple of points. My question is, was there a waiver from either or both? Dr. Polonyi's withdrawal, and it's contained in my affidavit. I started out representing all three doctors and the practice.  Polonyi's not the issue. I mean, Polonyi was an employee. The issue is really with Gewertz and Wildermann. Was there a waiver as to either or both of those? Well, but that was, the question that Judge Surik raised was as to the same issue with Polonyi. In other words, Polonyi was saying, I wasn't a partner during the operative period. I had no control over billing practices. Gewertz was for most of it, but not all of it. So the judge was saying, hey, if you feel that you have a different defense. In other words, my position with Polonyi was, if I'm defending you, I've got to go in and say you had nothing to do with billing practices. Let me try it again. If there's something in the question that is not clear, let me know. There is no general waiver of conflict. As to either Gewertz or to Wildermann. Correct. Nobody gave a waiver. Correct. It does sound like the proverbial story of the kid who shoots his parents and then argues to the jury that he shouldn't be punished because he's an orphan. You wanted to make a point on the bottom. No, that's the point I was going to make. The issue raised with Polonyi had nothing to do with all this. What happened here, and I don't want to repeat myself, but when we got into all this discovery withheld stuff, that's when things fell apart. Let me ask you this. We're told that there was a waiver, maybe oral, on behalf of Dr. Wildermann. I take it that he was a partner throughout the period in issue here. He was. There's no question of whether he had power to direct the bookkeeper of what to do and how to do it. No question at all. Now, if there was a waiver on behalf of or by Dr. Wildermann, it couldn't have involved the Polonyi issue. There was no waiver on the part of Dr. Wildermann. The question that was raised was that, and I brought it to the court's attention, and I told Dr. Polonyi he should get another lawyer, was that he was simply an employee during a period of time and he wasn't involved in the issue. No, no, but what I'm saying is when that came to Judge Shorrock's attention, and we met with Judge Shorrock and Polonyi's new attorney was telling Judge Shorrock he wants to enter, but he needs a little time, Judge Shorrock said, are there any other problems like this, and I brought up the fact that Gewertz. Straddled. Straddled. So he said I want a written agreement from him that this is not a problem for him. And he got it. He got that. But you say there was never a waiver on behalf of or by Wildermann. No. And Wildermann was irrelevant to the policy. He wouldn't have fit that argument at all anyway. Thank you very much. Well, thank you very much, Mr. Shurman and Mr. Inouye. We'll take the matter under advisement.